Tami Lea Smith appeals from a summary judgment granted in favor of Reynolds Metals Company on her breach of contract and misrepresentation claims. We affirm *Page 94 
as to the breach of contract claim and reverse as to the misrepresentation claim.
Reynolds owns and operates four plants in the quad-cities area: the Alabama Reclamation Plant, the Alloys Plant, the Reduction Plant, and the Sheffield Plant. The plants are operated separately and have separate locations.
Prior to the summer of 1985 all four plants sponsored summer employment programs for college students whose parents worked at the plants. Each plant operated the program separately from the other plants, but occasionally exchanged students with some of the other plants if it needed students with particular skills.
The Alloys Plant was the only plant which sponsored a student employment program in the summer of 1985. Only students whose parents worked at the Alloys Plant qualified for the program, since the other plants did not sponsor such a program.
Smith was aware that in summers past Reynolds had hired college students who were children of Reynolds employees. Smith's father was employed at the Alabama Reclamation Plant. In early 1985, at Smith's request, her mother contacted Reynolds (the mother stated that she did not call the Reclamation Plant, but that she did not know which plant she called) to inquire if it would be hiring summer student employees. She was told that it probably would be, but that a parent had to work for Reynolds. Smith's mother informed them that her husband worked for Reynolds. She did not specify at which plant he worked. She was also told that Reynolds would be taking applications during the week of spring school vacation.
On March 15, 1985, Smith filled out an application for summer employment with the Alloys Plant. The application was one page in length, front and back, and had a slip of paper attached to the top of the front which requested the name of the parent who worked at the Alloys Plant and the name of the department in which the parent worked, and which asked whether the parent was paid at an hourly basis or was salaried. Smith testified that when she turned in her application to the clerical staff in the personnel office she informed them that she did not know which department her father worked in but that she knew he worked in reclamation. She further testified that the clerical staff told her not to worry, that they would look up the department for her.
On or about May 13, 1985, Smith received a letter from Dick Sanderson, personnel representative of the Reynolds Alloys Plant, which offered her summer employment. The pertinent parts of the letter were as follows:
 "Thank you for your interest in Summer Employment with the Alloys Plant of Reynolds Metals Company. A few positions will be available this summer and you are being offered one of them.
 "Your salary will be $850.00 per month, payable twice a month. Please come to the personnel office at 8:00 a.m. on May 28, 1985. This will be your first day of work. You may work no longer than twelve weeks. Your work assignment and supervisor are shown at the bottom of this letter."
The last paragraph of the letter stated that if Smith was unable to accept the offer, she should notify Sanderson by May 24, 1985.
Smith reported to the Reynolds personnel office on May 28, 1985, where an orientation session was held for the participants in the summer program. During the session Sanderson inquired whether there were any applicants who could not work the full twelve weeks. The applicants were also requested to fill out and sign certain documents which were necessary to process their employment. Included among these documents was a form entitled "Salary Employment Notification," which was an employment contract that specified the compensation rate and schedule, and stipulated that either party could terminate the contract at any time.
Smith's employment was terminated after three weeks of work because Sanderson *Page 95 
discovered that she did not meet the policy requirements for the summer program, in that her father was not employed at the Alloys Plant. Smith was unable to obtain summer employment following her termination from Reynolds.
Smith contends that the letter from Sanderson was a unilateral offer of employment which she accepted by reporting to work on May 28, 1985, as required by the offer and that as a result of her acceptance a contract was formed. She also contends that the contract was for a definite term of 12 weeks.
Reynolds contends, and we agree, that no definite period of time was specified in the letter offering employment. The letter merely stated that she could work no longer than twelve weeks.
If a contract for employment does not specify a duration and is indefinite, it is construed to be terminable at will. Wilsonv. Vulcan Rivet Bolt Corp., 439 So.2d 65 (Ala. 1983). Therefore, even if Smith had a contract with Reynolds, as she contends, she could not recover for breach of contract because no definite period of time was specified in the letter offering employment, and the contract would be construed to be terminable at will. It has been consistently held that employment-at-will contracts may be terminated by either party with or without cause or justification. See Kitsos v. MobileGas Service Corp., 431 So.2d 1150 (Ala. 1983), and cases cited therein. Accordingly, summary judgment for Reynolds on the breach of contract claim was proper.
Smith also contends that Reynolds misrepresented to her that (1) she would be qualified for summer employment if a parent worked for "Reynolds"; (2) she met all the qualifications for summer employment at Reynolds; and (3) her employment would last the entire summer. Smith alleges that she turned down other employment opportunities and forwent going to summer school in reliance on these misrepresentations.
If there is any evidence which supports the position of the non-moving party, summary judgment should not be granted.Pittman v. Martin, 429 So.2d 976 (Ala. 1983). All reasonable inferences from the facts are to be viewed most favorably to the non-moving party. Rule 56, A.R.Civ.P.
Fraud by misrepresentation of a material fact is defined in Alabama Code (1975), § 6-5-101:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
An innocent misrepresentation is as much a legal fraud as an intended misrepresentation and the good faith of a party in making what proves to be a material misrepresentation is immaterial as to the question whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment. Maring-Crawford Motor Co. v. Smith, 285 Ala. 477,233 So.2d 484 (1970).
In order for Smith to recover damages for an innocent mistake amounting to a legal fraud, she must show: (1) that there was a false representation; (2) that it concerned a material fact; (3) that it was relied upon by her; and (4) that she was damaged as a proximate result of the reliance. Mahoney v.Forsman, 437 So.2d 1030 (Ala. 1983).
Smith has presented at least a scintilla of evidence on each element of misrepresentation. Smith says she was told that a qualification for the job was that a parent must work for "Reynolds" and that she was told by letter that she was qualified for the job. These alleged statements concerned a fact material to Smith, which was her interest in employment with Reynolds. Smith testified that she relied upon these misrepresentations and turned down other employment and educational opportunities as a result.
Accordingly, summary judgment for Reynolds on the misrepresentation claim *Page 96 
was not proper. Therefore, this part of the judgment is reversed and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.