**Elizabeth K. VILAS**

v.

**Kathy Hall LYONS, et al.**

**Civ. No. PN–88–509.**

United States District Court, D. Maryland.

Nov. 16, 1988.

Steven R. Buckner, Kaplan, Wechsler, Selzer & Buckner, Bethesda, Md., for plaintiff.

Graeme W. Bush and Eileen M. Mallon, Caplin & Drysdale, Chartered, Washington, D.C., for defendants Kathy Hall Lyons, Vitro Corp. and Vitro Corp. Retirement Plan.

Rebecca N. Strandberg, Bethesda, Md., for defendants Donald Vilas, Barbara Vilas Martin, Mark Vilas and Carol Vilas.

## MEMORANDUM

NIEMEYER, District Judge.

Edward T. Vilas, as an employee of Vitro Corporation, accumulated benefits in the Vitro Corporation Retirement Plan of over $600,000. In March of 1986, he elected to take an early retirement opportunity offered by Vitro Corporation and to withdraw his accumulated benefits in a lump sum. Since this required his wife's consent, Mr. Vilas reached an agreement with his wife, Elizabeth K. Vilas, under which she agreed to release any spousal interest she had in these retirement benefits to permit Mr. Vilas to withdraw these funds in a lump sum and ultimately to give this money to his four children from a previous marriage. In return, Mr. Vilas promised to establish an annuity for Mrs. Vilas which would provide her with income of $40,000 per annum for the remainder of her life. She contends that this annuity was to have been provided in Mr. Vilas' will or by an inter vivos gift from him.

In accordance with the agreement, Mrs. Vilas executed a "Benefit Election Form" on March 11, 1986, by which she waived all her rights to the retirement benefits of Mr. Vilas, which were estimated at that time to be approximately $571,000. One month later on April 11, 1986, Mr. Vilas withdrew all benefits to which he was entitled from the Vitro Corporation Retirement Plan. The total amount was $609,767.48. He placed the money in individual retirement accounts (IRA accounts) in his own name, designating his four children as beneficiaries.

Several months later Mr. Vilas died, and his will was admitted to probate in the Circuit Court for Montgomery County, Maryland. The will did not provide the annuity promised to Mrs. Vilas and she did not receive it by inter vivos gift. The money in the IRA accounts was distributed to Mr. Vilas' children as he had specified during his lifetime.

Having been deprived of her $40,000 annuity, for which she had waived any right to Mr. Vilas' retirement benefits, Mrs. Vilas filed this suit in six counts against the personal representative of Mr. Vilas' estate, Mr. Vilas' children, Vitro Corporation, the Vitro Corporation Retirement Plan, and its administrator, Kathy Hall Lyons.

In Count I plaintiff sues the Corporation, the Plan and its administrator under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., demanding damages because these defendants failed to comply with the requirements of ERISA in obtaining a spousal waiver from her, and because without an effective spousal waiver the distribution to Mr. Vilas violated the Act.

Count II is brought against all defendants seeking a judgment declaring that the spousal waiver form signed by plaintiff is null and void.

In Count III plaintiff sues Donald Vilas, as personal representative of Mr. Vilas' estate, for breach of contract by Mr. Vilas claimed to be in violation of ERISA.

In Counts IV and V, the plaintiff seeks an injunction against the children of Mr. Vilas to prevent them from using the funds distributed to them from the IRA accounts established by Mr. Vilas during his lifetime and seeks to establish a constructive trust over these funds.

Finally, in Count VI, the plaintiff sues Donald Vilas, as personal representative of Mr. Vilas, alleging that Mr. Vilas committed fraud on the marital estate. This count invokes pendent jurisdiction of the Court.

The alleged wrongful conduct of each count of the complaint is grounded on either the claim that Mr. Vilas breached his agreement to provide Mrs. Vilas with an annuity or that her waiver of spousal rights failed to comply with ERISA.

The defendants have filed motions to dismiss and for summary judgment asserting the validity of the spousal waiver and a lack of standing to sue and subject matter jurisdiction.

I. Spousal Waiver of Retirement Benefits

In Counts I and II Mrs. Vilas has sued the Corporation, the Plan and its administrator, alleging that the spousal waiver given by Mrs. Vilas was deficient in two respects. She alleges that (1) these defendants did not provide her with an adequate explanation of the rights that she was relinquishing and (2) the Benefit Election Form that she signed misstated the value of the benefits relinquished.

When Vitro Corporation adopted a plan to make available to its employees the option for early retirement, it sent written information to Mr. Vilas describing all the options available, and it advised him that he would have to obtain the written consent of his wife if he elected to receive his retirement benefits other than by a qualified joint and survivor annuity. It also appears undisputed that on January 21, 1986, both Mr. and Mrs. Vilas attended an informational session held by Vitro Corporation at which the early retirement plan was described, as were the benefit options and the need for spousal consent.

On March 5, 1986, Mr. Vilas signed a form acknowledging that he had read and understood the information supplied by Vitro Corporation relating to early retirement and that he elected to take early retirement. Some time before March 11, 1986, Mr. Vilas asked Mrs. Vilas to execute a Benefit Election Form consenting to his receiving his retirement benefits in lump sum. Mrs. Vilas contends that she agreed to do so only on the promise of Mr. Vilas to provide her with an annuity of $40,000 for the remainder of her life. She alleges he agreed to do this by inter vivos gift or in his will. Both Mr. and Mrs. Vilas thereafter went to Vitro Corporation on March 11, 1986 and executed the form.

The form indicated that Mr. Vilas elected to receive a lump sum payment of $570,975.56. The form referred to this amount as a "Benefit Estimate" based on certain information listed on the form relating to her husband's income and plan contributions. At the end of the form, the following language, to which Mrs. Vilas subscribed, is written:

> I have read the explanation of the qualified joint and survivor annuity provided on the Description of Options and I consent to waive this form of benefit payment and agree with my spouse's election above. I further understand that upon my spouse's death, there will be no further benefit payments to me. This election is irrevocable unless my spouse revokes the election in the required time period.

The plaintiff's signature followed this language, and a notary public seal and witness' signature was beside her signature.

Mr. Vilas then received his retirement benefits in lump sum, which turned out to be $609,767.48, and put this in various IRA accounts in his name, designating his children from a prior marriage as beneficiaries on his death.

Several months later on August 6, 1987, Mr. Vilas died. When his will was probated, Mrs. Vilas discovered that Mr. Vilas never did establish the annuity for her that she contends had been promised, prompting her to file this action.

In respect to Mrs. Vilas' contention that she received inadequate explanation of the rights that she waived, she argues that she did not receive a document entitled "A Description of the form of Payments and Options Available for election." Moreover, the Benefit Election Form itself, she contends, did not advise her of those rights that she waived, and the "Description of Options" document, which was referred to in the Benefit Election Form, had not been attached to the form when she signed it.

Her second contention, that the benefits waived were misstated, is based in the fact that the Benefit Election Form described a benefit of $570,976, and the amount received shortly thereafter was actually $609,767.

Because she received inadequate information before executing a spousal waiver and because the amount was misstated, Mrs. Vilas claims that her waiver was void and consequently any distribution of Mr. Vilas' benefits was a breach of fiduciary duty in violation of ERISA.

In 1984, Congress enacted the Retirement Equity Act, amending ERISA to require that a qualified joint and survivor annuity be provided to the surviving spouse of a participant of an employee pension benefit plan, unless the surviving spouse has waived his or her rights to benefit plan proceeds and consented to the participant's election of an alternative benefit form. The statute provides that a waiver of the qualified joint and survivor annuity and consent to the participant's election will be effective if

(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C. § 1055(c)(2).

Section 1055(c)(6) further provides that "[i]f a plan fiduciary acts in accordance with part 4 of this subtitle [the fiduciary requirements of ERISA] in ... relying on a consent ... then such consent ... shall be treated as valid for purposes of discharging the plan from liability to the extent of payments made pursuant to such act." 29 U.S.C. § 1055(c)(6).

The intent of Congress as described in the very words of the Act is to insulate plans under the act from liability if the spousal waiver that is relied on conforms to the requirements of § 1055(c)(2). In the absence of *actual knowledge* of fraud or coercion in the inducement or *actual knowledge* of invalidity, the plan administrator may rely on a waiver that conforms on its face, and he will not, by doing so, expose himself or the plan to liability for relying on it. This is so even if the waiver turns out in fact to be invalid. Congress intended with good reason to permit plans and their administrators to rely on such waivers much as a holder in due course may rely on a note duly negotiated to him.

The Senate Report that accompanied the Retirement Equity Act confirms the expressed intent:

If the plan administrator acts in accordance with the fiduciary standards of ERISA in securing spousal consent ... then the Plan will not be liable for the payment to the surviving spouse. For example, if the plan administrator receives a notarized spousal consent, valid on its face, which the plan administrator has no reason to believe is invalid, the plan would certainly be allowed to rely on the consent even if it is, in fact, invalid.

Sen.Rep. No. 575, 98 Cong.2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin. News 2547, 2560.

In this case the waiver on its face conforms to the Act. The Benefit Election

Form that was signed by Mrs. Vilas reveals a list of several options by which the retirement benefits of Mr. Vilas might have been paid, and the option selected by Mr. Vilas as indicated on the form, was a lump sum payment to him. Not only does the form expressly set forth the various options available, including amounts that Mrs. Vilas would receive if other options had been elected, but she stated that she had in fact *read* the document entitled "Description of Options," which provided more detailed information. She expressly "waived" any joint and survivor annuity and "agreed" to Mr. Vilas' selection, which she acknowledges was irrevocable without Mrs. Vilas' consent. Finally, she acknowledged that on Mr. Vilas' death she would receive "no further benefit payments." Her waiver and consent are in writing and her signature is notarized.

All of the requirements of § 1055(c)(2) of the Act are satisfied. Since there are no allegations that the Plan or its administrator had any actual knowledge of fraud, coercion or any other reason for invalidity of the spousal waiver, the administrator properly relied on the waiver of spousal rights executed by Mrs. Vilas and incurred no liability for doing so.

■ Mrs. Vilas urges that, despite her acknowledgement that she had read the Description of Options, she never did so. She did not even receive one, and she believes her husband never received one. These are precisely the types of allegations that the Act precludes. The notarized form that Mrs. Vilas freely signed and which states she read the Description of Options may not now be impeached by her. Moreover, the Act does not require that she have been provided with a copy of the Description of Options. A document of that type was only to be sent to a *participant:*

Each Plan shall provide to each Participant, within a reasonable time before the annuity starting date ... a written explanation of:

(i) The terms and conditions of the qualified joint and survivor annuity,

(ii) The Participant's right to make, and the effect of, an election under paragraph (1) to waive the joint and survivor annuity form of benefit.

(iii) The rights of Participant's spouse under paragraph (2), and

(iv) The right to make, and the effect of, a revocation of an election under paragraph (1).

29 U.S.C. § 1055(c)(3)(A).

■ While Mrs. Vilas avers that to the "best of [her] knowledge, information and belief, Edward T. Vilas did not have within his possession, at anytime, a Description of Options Form ...," that averment is insufficient to create a genuine issue of material fact. It appears to be uncontroverted that both Mr. Vilas and Mrs. Vilas attended an information session at which the benefits and spousal waiver were thoroughly explained. In addition, the plan administrator, Kathy Hall Lyons, affirmatively states that Mr. Vilas received the benefit explanation forms. Mrs. Vilas' *belief* that her husband never received the forms does not create a genuine issue of fact.

■ In addition, a dispute over this issue of fact would not be an issue of a *material* fact, because the issue of whether or not the participant Edward Vilas received the information is irrelevant to Mrs. Vilas' claim that her spousal waiver is void. Mrs. Vilas is without standing to challenge whether the Plan sent the information, because she is not a participant within the meaning of ERISA.

■ Mrs. Vilas also argues that the face of the Benefit Election Form that she signed did not contain an explanation of her spousal rights and that defendants failed to advise her of those rights. She cites Senate Report No. 99–313 which states that "[t]he spousal consent form is to contain such information as may be appropriate to disclose to the spouse the rights that are relinquished." She contends that the administrator had reason to know of the invalidity of the form because the "Description of Options" was not attached. Mrs. Vilas, however, admits that she executed a Benefit Election Form waiving her rights to the joint and survivor

annuity and consenting to the election of her husband of the lump sum option. The form acknowledged that she had read the information provided in the "Description of Options" document, and it is uncontroverted that her husband received that document. Mrs. Vilas cannot go behind the valid waiver form and now argue that she did not know what benefits were available to her or that no Vitro Corporation employee explained the information to her, when she already stated she had read the "Description of Options."

■ Finally, Mrs. Vilas urges that her waiver is invalid because the form she signed underestimated the lump sum payment her husband would receive. It is undisputed that the form she signed estimated that her husband would receive $570,975.56, and, in fact, he received $609,767.48. The Benefit Election Form itself made clear, however, that the figures were estimates, and Mrs. Vilas was fairly apprised of that fact. There is no suggestion in the record that the difference in figures was material to Mrs. Vilas' claims. She alleges in her complaint that she gave up *all* retirement benefits in exchange for a lifetime annuity of $40,000. That sum is generous in view of the joint and survivor annuity benefit that she waived, regardless of whether the lump sum was $571,000 or $609,000. Under some of the annuity options that she waived and which were available to Mr. Vilas, she could have received as little as $31,000 per year.

There can be no doubt that Mrs. Vilas intended to waive her spousal rights as part of an agreement with her husband, and there is no suggestion that she would not have done so had she known that the estimated amount on the consent form would have been some six percent lower than the actual payout.

The Court concludes that Congress carefully created specific procedures for obtaining spousal consent under the Retirement Equity Act and provided that plan administrators would be able to rely on consents such as the one Mrs. Vilas signed in this case. The Plan met all of the requirements of this statute in obtaining Mrs. Vilas' consent. Accordingly, the Court will grant the motion for summary judgment of Vitro Corporation, its Plan, and Kathy Hall Lyons, the Plan administrator.

## II. Subject Matter Jurisdiction

Counts II through V are brought under ERISA variously against Donald Vilas as personal representative of the estate of Mr. Vilas and against the Vilas children. Count II seeks to have the spousal waiver declared null and void; Count III is for breach of the contract between her and Mr. Vilas to provide her with a $40,000 annuity; Counts IV and V are against the children to enjoin their use of the money received from Mr. Vilas' IRA accounts and to establish a constructive trust over that money. Those accounts had been created with the lump sum payment by the Plan to Mr. Vilas on his early retirement.

There are no allegations that the children knew of or participated in the agreement between Mr. and Mrs. Vilas or that they knew where the monies creating the IRA accounts came from. No wrongdoing of any kind is attributed to them.

Independent of the merits of the claims against Donald Vilas as personal representative and the children, however, they all challenge jurisdiction of the court by reason of plaintiff's standing under ERISA and because plaintiff's claims do not "arise under" federal law.

■ With respect to standing, they argue that ERISA permits only beneficiaries, participants, and fiduciaries to bring a civil action against a plan or its administrator and that Mrs. Vilas is not within any of these categories of persons. 29 U.S.C. § 1132(e)(1).

ERISA defines a beneficiary as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). These defendants contend that because Mrs. Vilas waived her spousal rights in her husband's retirement benefits and her husband subsequently received a lump sum payment of all his benefits, Mrs. Vilas is no longer a

"beneficiary" and therefore is not within the class of persons entitled to bring suit under ERISA. They urge that Mrs. Vilas is at best entitled to damages and not to benefits.

Mrs. Vilas contends that because her waiver of rights under the Plan is void, she is still a beneficiary "who is or may become entitled to receive a benefit."

It is clear that civil actions for claims under ERISA may be brought only by a participant, beneficiary, or fiduciary. 29 U.S.C. § 1132(a); *see also Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 25, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983) (observing that ERISA carefully limits the parties entitled to sue thereunder to participants, beneficiaries, and fiduciaries). No court, however, has had occasion to decide whether a spouse who signed a spousal waiver required by ERISA and then brings suit to challenge the validity of that waiver is a beneficiary entitled to bring suit under ERISA.

Both plaintiff and these defendants refer the Court to *Gilquist v. Becklin*, 675 F.Supp. 1168 (D.Minn.1987). In *Gilquist*, the court had to decide whether former employees and former participants in a stock ownership plan had standing under ERISA to raise a claim of breach of fiduciary duty by plan trustees after they had withdrawn from the plan and received a lump sum payment. The court observed that any recovery by the plaintiffs would be in the nature of damages for the alleged tortious acts and not a benefit under the plan. Accordingly, it concluded that the plaintiffs were not participants in or beneficiaries of the plan entitled to receive benefits and therefore they lacked standing. *Id.* at 1171.

The procedural history in *Gilquist* is significant. The court in an earlier opinion in that same case had refused to dismiss the plaintiffs' claims for lack of standing. The court explained, "[t]his conclusion was based on the unresolved question of whether the plaintiffs' spouses had consented in writing to receiving lump-sum payments rather than converting the benefit into a joint and survivor annuity form of distribu-

tion. If spousal consents had not been obtained, it was possible that the spouses were still potential beneficiaries and the plaintiffs thus were 'participants' with standing under 29 U.S.C. § 1002(7)." *Id.* at 1169. The *Gilquist* court therefore concluded, at least implicitly, that the spousal consent eliminated the possibility that the spouses were potential beneficiaries.

Here, the Court has concluded that the spousal consent was valid and that the Plan properly distributed the benefits to Mr. Vilas. Therefore, plaintiff's claim would have to be one for damages and not a claim for benefits from the plan. The Court agrees with *Gilquist* that a valid spousal waiver thus renders the spouse no longer a potential beneficiary. Consequently, she is not one of those persons designated by ERISA to be entitled to sue under the Act.

This ruling is consistent with cases that have confronted analogous issues under the Act. *See Kuntz v. Reese*, 785 F.2d 1410, 1411–12 (9th Cir.) (former employees who received lump sum distribution were not participants entitled to receive benefits and thus could not bring suit under ERISA because any recovery would be a damage award, not payment of vested benefits), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *Joseph v. New Orleans Elec. Pension*, 754 F.2d 628 (5th Cir.) (retirees who accepted lump sum payment for everything due them lacked standing to sue plan trustees for breach of fiduciary duty), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985); *cf. Stanton v. Gulf Oil Corp.*, 792 F.2d 432 (4th Cir.1986) (retired employee was not participant entitled to bring suit under ERISA when plan not extended to employees of his grade until after date of his retirement).

These defendants also urge as additional grounds in support of their contention that the Court lacks subject matter jurisdiction in Counts II and III that the claims do not "arise under" federal laws as required by 28 U.S.C. §§ 1331 and 1337, which are also relied on by the plaintiff.

A case "arises under" federal law when the vindication of the right alleged requires construction of federal law, either as to its

correctness, meaning, or its applicability. *Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Mrs. Vilas thus responds to defendants' motion to dismiss by pointing out that the validity of her spousal waiver which is challenged under Count II raises questions as to the proper interpretation and applicability of ERISA. And as for the breach of contract claim under Count III, she contends that it falls within the common law of ERISA, because ERISA preempts her state claim for breach of contract.

■ It is true that the validity of the spousal waiver that is raised in Count II is a question of federal law, which for this case, has been resolved in the discussion above on the motion for summary judgment as to Count I. But for resolution of that issue only the Plan, fiduciaries, and certain nonfiduciaries who knowingly participate in a breach by a fiduciary may be sued. While Mrs. Vilas is entitled to sue only the Plan or a fiduciary under the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(d), several courts have also allowed suits to be maintained under ERISA against nonfiduciaries. *See, e.g., Brock v. Gerace,* 635 F.Supp. 563 (D.N.J.1986); *Freund v. Marshall & Isley Bank,* 485 F.Supp. 629 (W.D.Wis.1979). However, these cases stand for the proposition that nonfiduciaries can be held liable under ERISA only for knowingly participating in a breach of trust by a fiduciary. Plaintiff does not make such allegations in this case against Donald Vilas as personal representative or against the Vilas children.

Thus, the allegations of Count II, to the extent that they involve the Corporation, the Plan and the administrator, are resolved against Mrs. Vilas in the ruling on Count I. To the extent they tend to implicate the other defendants, the Court has no jurisdiction.

■ As to Count III for breach of the contract that Mr. and Mrs. Vilas allegedly entered into to provide her an annuity, the Court likewise concludes that it has no jurisdiction to resolve the issue. That claim is to be resolved by the state common

law principles of contract and does not call for any interpretation, construction, or application of federal law to resolve. The mere fact that the consideration given by Mrs. Vilas for the annuity that was promised was a spousal waiver is insufficient to make this claim an action arising under federal law.

■ Plaintiff's argument that ERISA preempts any state cause of action for breach of contract in this circumstance is also without merit. ERISA preempts state law to the extent that the state law "relates to" an employee benefit plan. 29 U.S.C. § 1144(a); *see also Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Plaintiff, however, appears to argue that ERISA preempts any cause of action that involves in any way a plan covered by ERISA. This is not a correct statement of the law.

In *Pilot Life v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court held that ERISA preempts state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan. *Id.* 107 S.Ct. at 1550–51. And in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1554, 95 L.Ed.2d 55 (1987), the Court held that ERISA's civil enforcement provisions displace any state common law actions to recover improperly processed benefit claims. These narrow holdings do not support plaintiff's argument that a contract whose consideration consists of a spousal waiver required by ERISA must be preempted by ERISA and be decided under federal common law. This Court simply sees no need for a uniform federal law of contracts entered into by spouses that involve spousal waivers. Were the Court to conclude otherwise, every domestic relations dispute or probate dispute involving a benefit plan would have to be litigated in federal court. Congress did not intend so broad a reach.

■ The validity of the spousal waiver executed by Mrs. Vilas, which the Court today has affirmed, was a dispute properly resolved in this Court involving the plain-

tiff, the Plan, and its administrator. The open questions, left unresolved, whether Mr. Vilas breached a contract with Mrs. Vilas in failing to provide an annuity or improperly depriving her of a marital estate as alleged in Count VI, are disputes between plaintiff and the personal representative of Mr. Vilas in state court, where an action is currently pending involving these issues. As for the request for relief against the children for an injunction and a constructive trust, the Court can understand no basis under federal law for the relief sought. Whether state law would grant such relief is similarly not decided here.

The Court will exercise its discretion and refuse to exercise pendent party jurisdiction over all of these state law claims against parties who were not necessary to the resolution of issues decided under Count I. *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). This judgment would appear appropriate because the state court proceeding has been stayed waiting for the outcome of this decision, and the only remaining issues are state claims, which involve proofs quite unrelated to the issues resolved in Count I.

Accordingly, for the reasons given, the Court will enter a separate order granting the defendants' motions to dismiss and for summary judgment.