**O.C. HOLMAN, Plaintiff,**

v.

**K–MART CORPORATION, Defendant.**

Civ. A. No. 92–D–361–N.

United States District Court,
M.D. Alabama, N.D.

Aug. 30, 1993.

Thomas E. Jones, Auburn, AL, Donald R. Harrison, Dadeville, AL, for plaintiff.

A. Brand Walton, John F. DeBuys, Jr., Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND JUDGMENT

DE MENT, District Judge.

This cause is now before the Court for findings of fact and conclusions of law following a December 15, 1992 bench trial on plaintiff's claim for statutory penalties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(c). The court has jurisdiction pursuant to 28 U.S.C. § 1331. As discussed below, judgment is due to be entered in favor of the defendant.

### I. Findings of Fact

On June 23, 1989, Mrs. Nelka A. Holman, the wife of the plaintiff, O.C. Holman, completed an application for disability retirement from defendant, K–Mart Corporation. [Stipulations of Facts, Pretrial Order at 2]. As part of this application, Mrs. Holman was required to fill out a form called "Form of Pension Payment." This form provides benefits to the surviving spouse of an employee. [*Id.*]. Mrs. Holman's form which elected to reject the spousal benefits was purportedly signed by Mrs. Holman and O.C. Holman and was witnessed by Vannoy Baxley who was the personnel and training manager for the K–Mart that employed Mrs. Holman. [Testimony of Vannoy Baxley, Tr. at 7]. Mrs. Holman died on April 2, 1990. [Stipulations of Facts, Pretrial Order at 3]. After his wife's death, Mr. Holman approached Ms. Baxley about receiving his wife's "paperwork and all." [Testimony of O.C. Holman, Tr. at 23]. In response, Ms. Baxley asked Mr. Holman if he thought he was entitled to his wife's benefits. [*Id.*, Tr. at 23]. Holman answered, "Well, if it is mine I am." [*Id.*, Tr. at 23]. Ms. Baxley then gave to the plaintiff information on life insurance he was entitled to receive. [*Id.*, Tr. at 23, 36].

Thereafter, on May 8, 1990, Mr. Holman wrote K–Mart Corporation to request a copy of his wife's Retirement Benefits. [Stipulations of Facts, Pretrial Order at 3; Defendant's Exhibit 2]. In a letter in response to Mr. Holman, dated July 3, 1990, K–Mart informed the plaintiff that his wife had re-

jected the spousal benefits and had instead elected a Life Income form of pension payment, with no benefit payable to him after her death. [*Id.*]. Included in the letter was a copy of the "Form of Pension Payment" and a letter dated October 30, 1989, written by K–Mart to Mrs. Holman which explained the effect of her election. [*Id.*; Defendant's Exhibit 2].

It was at this time that Mr. Holman learned that the signature on the "Form of Pension Payment" was not his. [Testimony of O.C. Holman, Tr. at 25]. He then went to Thomas E. Jones, Esq., an attorney, for help. [*Id.*, Tr. at 42]. In a letter dated July 11, 1990, Mr. Jones advised K–Mart that the signature on the "Form of Pension Payment" was not Mr. Holman's and requested "any and all paperwork in Mrs. Holman's file relative to her financial transactions involving K–mart Corporation, any and all financial transactions involving her pension, and any and all other financial transactions which may be applicable in this situation." [Stipulations of Fact, Pretrial Order at 3; Defendant's Exhibit 2]. On July 31, 1990, Terry Diegel, Manager, Pension Plan, Employee Benefits Department, K–Mart, wrote Mr. Jones to acknowledge that there was a possibility of forgery but that there was no evidence to establish it conclusively. Mr. Diegel stated that unless the signature was proven to be a forgery, the signature must be accepted and survivor benefits must be denied. [*Id.*, Pretrial Order at 4].

Upon receipt of this letter, Mr. Jones hired Lamar Miller, a handwriting expert, to establish proof that the signature was a forgery. Mr. Miller stated that it was his opinion that the signature was not written by O.C. Holman. [*Id.*, Pretrial Order at 4]. On January 11, 1991, Mr. Jones sent a copy of Mr. Miller's memorandum as proof of the forgery. K–Mart then requested copies of the documents which Mr. Miller used to form his opinion. [*Id.*]. On April 25, 1991, after receiving the documents, K–Mart wrote to Mr. Holman and enclosed a check for $369.47, for the first thirteen monthly payments of the survivor benefit. This letter included an explanation of how the benefit was calculated. [*Id.*; Defendant's Exhibit 2].

On May 15, 1991, Mr. Jones requested by telephone specific documents relating to the retirement plan. K–Mart promptly responded to his request and mailed the documents. On June 13, 1991, Mr. Jones demanded that K–Mart pay to Mr. Holman $100.00 per day for failure to provide the documents requested in the letter dated July 11, 1990. K–Mart declined to do so. [Stipulations of Fact; Pretrial Order at 5].

Plaintiff then filed a complaint with this court alleging he is entitled to the penalty provisions described in the Employee Retirement Income Security Act of 1974 as amended (ERISA), 29 U.S.C. § 1132(c). Following a trial held December 15, 1992, the matter is now before the court for final decision and entry of judgment.

## II.   Conclusions of Law

The statutory penalty provision of 29 U.S.C. § 1132(c) states as follows:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Thus, an award of the statutory penalties is within the discretion of the court.

The plaintiff has set forth several reasons that these penalties should be imposed against K–Mart. Plaintiff first asserts that the court should award these penalties because the defendant committed fraud. He argues that defendant committed fraud when Ms. Baxley, the personnel manager who accepted Mrs. Holman's application, witnessed a signature on the "Form of Pension Payment" that was not O.C. Holman's. Plaintiff contends that the actual knowledge of fraud by Ms. Baxley, as an agent of K–Mart, is actual knowledge of fraud by K–Mart. Mr.

Holman then cites *Vilas v. Lyons,* 702 F.Supp. 555, 559 (D.Md.1988), for the proposition that a strong penalty should be imposed when there is actual knowledge of fraud by the Plan Administrator. [Plaintiff's Post-trial Brief at 2]. The court does not read *Vilas* this way. In fact *Vilas* states that "in the absence of actual knowledge of fraud, . . . or actual knowledge of invalidity, the plan administrator may rely on a waiver that conforms on its face, and he will not, by doing so, expose himself or the plan to liability for relying on it . . . even if the waiver turns out to be invalid." *Vilas* does not state that if actual knowledge of fraud is shown, a strong penalty should be awarded.[1]

■   Yet, even if actual knowledge of fraud would warrant penalties under § 1132(c), the plaintiff must first prove fraud. To prove fraud, plaintiff must show that "(1) the defendant made a false representation; (2) concerning a material fact; (3) upon which the plaintiff reasonably relied; and (4) as a proximate result of such reliance, the plaintiff suffered damages." *Intercorp, Inc. v. Pennzoil Company,* 877 F.2d 1524, 1534 (11th Cir.1989) *citing Smith v. Reynolds Metals Co.,* 497 So.2d 93, 95 (Ala.1986). Mr. Holman states that the act of fraud occurred when Ms. Baxley witnessed a signature that was purported to be Mr. Holman's which in fact was not. Under these circumstances, the elements of fraud are not met. "To sustain a fraud action, the representee must have been deceived by and relied upon the representation as an inducement of his action or inaction." *Jones v. Alabama Farm Bureau Mutual Casualty Company,* 507 So.2d 396, 401 (Ala.1986) *citing Old Southern Life Insurance Company v. McConnell,* 52 Ala.App. 589, 296 So.2d 183 (Ala.Civ.App.1974). Though, Ms. Baxley may be guilty of making a false representation, Mr. Holman has failed to prove that he relied on her representation. Mr. Holman cannot be said to have acted based on the representation. In fact, he did not even have knowledge of the representation. The only representation that Mr. Holman can be said to have relied upon was the statements of Mrs. Holman that said he

---

1.   However, the court will acknowledge that if the plan administrator has actual knowledge of fraud, the court would have a strong incentive to award the statutory penalties.

would draw "money for one year from K–Mart" if anything ever happened to Mrs. Holman. [Testimony of O.C. Holman; Tr. at 34]. But this is not the representation at issue. Ms. Baxley's signature on the "Form of Pension Payment" is the alleged fraudulent act. Yet, plaintiff has not put forth any evidence to show that Mr. Holman or even Mrs. Holman relied upon Ms. Baxley's signature. In fact, all the evidence points to the fact that Mrs. Holman knew that it was not O.C. Holman's signature on the form. Thus, there is no proof of reliance. Since plaintiff has failed to prove the element of reliance, the argument that penalties should be awarded because fraud was committed must fail.

Another reason set forth by the plaintiff to impose penalties on the defendant is that the plaintiff suffered great prejudice by the defendant's failure to comply with the request for copies of Mrs. Holman's retirement benefits plan. Mr. Holman testified that soon after Ms. Baxley's refusal to give him the requested papers, he went to the hospital where it was found he was suffering from high blood pressure and diabetes. [Testimony of O.C. Holman; Tr. at 28, 29]. Mr. Holman infers that his illnesses are the result of his confrontations with the K–Mart Corporation over his wife's retirement papers. These illnesses represent the prejudice he suffered and thus he argues he is entitled to be awarded the penalties.

■ The imposition of penalties under 29 U.S.C. § 1132(c) is not conditioned on a showing of prejudice, but is left to the discretion of the court. Section 1132(c) is "punitive rather than compensatory in nature." *Curry v. Contract Fabricators Profit Sharing Plan,* 744 F.Supp. 1061, 1066 (M.D.Ala.1988).

> "Since the penalty provisions of Section 1132(c) are aimed at inducing administrators to comply promptly with requests for information about the plan, the primary focus of a court in assessing damages under that section should be the conduct of the administrator upon whom the liability is personally imposed. If a plan administrator in good faith is unable to comply with a request for information within the thirty (30) day period, the assessment of the statutory penalty would not further the

statute's purpose. However, if an administrator intentionally withholds information, for whatever reason, where a proper request has been made, the assessment of the statutory penalty would be appropriate even though the participant or beneficiary cannot show prejudice arising therefrom."

*Id.* at 1066, *citing Porcellini v. Strassheim Printing Co., Inc.,* 578 F.Supp. 605, 614 (E.D.Pa.1983). Thus, our primary focus should be on the conduct of K–Mart. If assessing penalties on K–Mart would not further the punitive nature of this statute, then the court should find in favor of the defendant.

■ The court finds that at all times K–Mart acted in good faith. Mr. Holman's first request for his wife's "paperwork" was made to Ms. Baxley soon after his wife's death. [Testimony of O.C. Holman; Tr. at 23]. Ms. Baxley gave Mr. Holman all the information she believed he was entitled to receive which at that point was only the information on his wife's insurance. [*Id.* at 23]. Mr. Holman then wrote the Employee Benefits Department of K–Mart and specifically asked for a copy of his wife's retirement benefits. [Defendant's Exhibit 2, Letter dated May 8, 1990]. K–Mart promptly responded by sending Mr. Holman a copy of his wife's "Form of Pension Payment," which showed that Mrs. Holman had rejected spousal benefits, and a copy of a letter sent by K–Mart to Mrs. Holman explaining the effect of her rejection of these benefits. [Defendant's Exhibit 2; letter dated October 30, 1989]. When Mr. Holman learned that his signature was forged on the document, his attorney wrote a letter informing K–Mart of the forged signature and asking for all papers relative to Mrs. Holman's financial transactions. [Defendant's Exhibit 2; Letter dated July 11, 1990]. K–Mart responded to Mr. Holman on July 31, 1990, and acknowledged that there was a possibility of forgery but that since there was no conclusive evidence, the survivor benefits must be denied until the forgery is proven. [Defendant's Exhibit 2]. On February 11, 1991, Mr. Holman gave an expert opinion to K–Mart which established proof of the forgery and on April 25, 1991, K–Mart sent a check to Mr. Holman for the first

thirteen months of survivor benefits and a letter explaining how the benefits were calculated. [Defendant's Exhibit 2].

It is clear that K–Mart acted in good faith. Each communication with the plaintiff was responded to promptly. Plaintiff seeks penalties beginning on July 11, 1990. That is the date of the letter that first informed K–Mart of the forgery. However, the letter merely stated Mr. Holman's signature was a forgery. The defendant acted reasonably in requesting proof of the forgery before releasing any information. Once the plaintiff established proof of the forgery, the defendant promptly paid the survivor benefits that Mr. Holman was entitled to and released all information on how the benefits were calculated.

Section 1132(c) states "an administrator who fails or refuses to comply with a request for any information … (unless such failure or refusal results from matters reasonably beyond the control of the administrator) … may in the court's discretion be personally liable." Here, the court finds that any refusal to comply with plaintiff's request for information resulted "from matters reasonably beyond the control of the administrator." The defendant at all times acted reasonably and in good faith in responding to the plaintiff's demands. To impose penalties on the defendant would frustrate the punitive purpose of this statute.

Accordingly, it is CONSIDERED and ORDERED that JUDGMENT be and the same is hereby entered in favor of the defendant, K–Mart Corporation and against the plaintiff, O.C. Holman.

All costs herein incurred, together with the costs of the expert and a reasonable attorney's fee, both of which the defendant has offered to pay, are hereby assessed against the defendant, for which let execution issue.

If the plaintiff and the defendant cannot agree upon a reasonable attorney's fee, the court will entertain a motion to fix said fee.