[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15584
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01540-CV-2-VEH

KENNETH GREER,

Plaintiff-Appellant,

versus

HONDA MANUFACTURING OF ALABAMA, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 29, 2008)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

In this diversity action, plaintiff-appellant Kenneth Greer appeals the district court's grant of summary judgment in favor of defendant-appellee Honda Manufacturing of Alabama, LLC ("HMA") on Greer's claims of fraud, negligence and/or wantonness under Alabama law. After review, we affirm.

## I. BACKGROUND

### A. Facts

At all times relevant to this action, Greer was a resident of Attalla, Alabama and employed by the Town of Sardis City, Alabama in a full-time, permanent maintenance position earning $10 per hour. This civil action involves Greer's application for employment with the defendant HMA.

In July 2002, Greer began the application process for a position with HMA at its plant in Lincoln, Alabama. Greer learned that HMA was hiring for various positions through an advertisement in the Gadsden Times. The advertisement directed interested applicants to obtain an application through the State of Alabama in its Industrial Development Training department ("AIDT").

After submitting his application, Greer completed a pre-employment interview conducted by AIDT. Beginning in October 2002, Greer participated in five weeks of pre-employment training with AIDT. After completing the pre-employment training, Greer received instructions on applying for employment with

HMA.

On January 8, 2003, Greer applied for a position as an Equipment Service Associate ("ESA") with HMA. On January 21, 2003, Greer participated in a telephone screening interview conducted by the State of Alabama. The next day, Greer interviewed with HMA representatives at an AIDT facility.

On March 22 or 23, HMA sent Greer a letter about his employment advising that it was conditional upon his successful completion of a medical examination. A copy of this letter was not admitted into the record, but Greer admitted that this letter was identical to a second letter he received in April 2004, which will be detailed infra. Greer submitted to the required examination on March 31, 2003, after which he was measured for a work uniform and asked what name he would like sewn on his uniform. Greer alleges that he was told by the medical staff who performed the examination that he should be hearing something within so many weeks.

During the next thirteen months, Greer did not receive a start date from HMA or receive any other correspondence regarding his application. At some point prior to April 2004, Greer telephoned HMA regarding his application and was told by an unidentified HMA employee that he was still being considered for an ESA position and that "things still looked favorable." Greer concedes that this

3

unidentified HMA employee did not guarantee that he would be hired by HMA or that he would receive a specific start date of employment.

In April 2004, Greer received a second letter from HMA requesting that he submit to another medical examination to ensure that HMA had current medical information with Greer's application. Greer submitted to the second medical examination, after which he was again measured for a work uniform and asked what name he would like sewn on his uniform.

Approximately one week later, Greer received a letter, dated April 26, 2004, from Lynn Johnson in the Human Resources/Staffing department of HMA. The letter stated, in full:

> On behalf of Honda Manufacturing of Alabama, LLC, I would like to extend you a conditional offer of employment as a Equipment Service Associate. This offer is conditional pending the results of your medical examination, which is scheduled for Tuesday, April 20, 2004 at 11:00:00 AM.
>
> Your application will remain in the HMA hiring process until selected for a position. Due to the current volume of hiring we are not able to provide a time frame that you could be contacted and given a specific start date.
>
> HMA Equipment Service Associates currently have a starting hourly rate of $20.06 and overtime is paid at 1.5 times the hourly pay rate. Enclosed is a list of benefits the HMA associates and their family members will be eligible for when they are hired.
>
> Please do not resign from your current employer until you receive a confirmed hire date from a representative of HMA.

4

Employment with Honda Manufacturing of Alabama is a challenging and rewarding opportunity.

This April 26, 2004 conditional-offer letter is the offer from which the plaintiff's claims in this action arise.

On June 2, 2004, Greer received a third letter from HMA which alerted him that new advertisements would be placed in newspapers for applicants, but he need not reapply. The June 2, 2004 letter explained that as a recipient of the letter, he was assured that his application was currently in HMA's hiring system.

Sometime after receiving this letter, Greer contacted HMA to inquire as to why he had not received a start date. Greer was told that he was "still in the pool."

In May 2005, Greer received a final letter from HMA that provided:

Thank you for your interest in Honda Manufacturing of Alabama, LLC ("HMA") and for your time in discussing your career goals and possible opportunities at HMA. After careful review of the Equipment Service Associate job requirements, we do not have an opportunity for you.

HMA will soon post job advertisements for Equipment Service Associate positions in local newspapers. If you have gained relevant maintenance experience since your application with HMA, you are welcome to submit your resume for consideration. HMA will give your resume the same consideration and review as all other applicants for these positions.

During the application process that lasted from July 2002 to May 2005, Greer was offered six other employment opportunities that paid more than his

5

current job with the Town of Sardis City but less than an ESA position with HMA. The three offers that came after the April 26, 2004 conditional-offer letter from HMA were for positions as: (1) a sewing machine mechanic at Kappler, a manufacturer of disposable uniforms in Guntersville, Alabama, for $14.00 per hour; (2) a sewing machine repairman at an unnamed sewing machine plant in Anniston, Alabama, for $15.00 per hour; and (3) a service advisor for Nissan of Gadsden, Alabama, for $23,400 per year plus a commission. Greer alleged that he rejected all of these offers in reliance on HMA's conditional offers.

## B.    Procedural History

Greer filed a complaint in the Circuit Court of Talladega County, Alabama against HMA for fraud, negligence and/or wantonness arising out of HMA's conditional offer to him on April 26, 2004.[1]  Greer alleged that HMA's April 26, 2004 letter falsely represented to him that HMA was extending an employment offer conditioned only on him passing a medical examination, which he did, and that he reasonably relied on this employment offer to his detriment by declining other job opportunities.

HMA removed the case to federal court and moved for summary judgment.

---

[1]Greer makes no breach of contract claims in this case.  See Smith v. Reynolds Metals Co., 497 So. 2d 93, 95 (Ala. 1986) (stating that the plaintiff "could not recover for breach of contract because no definite period of time was specified in the letter offering employment, and the contract would be construed to be terminable at will").

The district court granted summary judgment in favor of HMA. The district court concluded that Greer could not survive summary judgment under the promissory-fraud standard or the less stringent fraud-by-misrepresentation standard in Smith v. Reynolds Metals Company, 497 So. 2d 93, 95 (Ala. 1986). The district court determined that Greer failed to present evidence that HMA had misrepresented to him that he had been officially hired because, among other reasons, the April 26, 2004 letter indicated that Greer would "remain in the HMA hiring process until selected for a position" and should not resign from his current employment until he received a confirmed hire date. This appeal followed.[2]

## II. DISCUSSION

### A. Fraud

Under Alabama law, "'[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.'" Smith, 497 So. 2d at 95 (quoting Ala. Code § 6-5-101). Thus, in order to recover damages for an innocent mistake amounting to a legal fraud, a plaintiff must show that: (1) there was a false representation; (2) it concerned a material fact; (3) it was relied upon; and (4) he was damaged as a proximate result

---

[2]We review de novo a district court's order granting summary judgment. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006).

7

of the reliance.[3]  Id.  If the misrepresentation is about an existing material fact, the plaintiff is not required to show an intent to deceive.  See Nat'l Sec. Ins. Co. v. Donaldson, 664 So. 2d 871, 876 (Ala. 1995).

However, where a plaintiff attempts to prove fraud based on a misrepresentation relating to an event to occur in the future, known as "promissory fraud," a plaintiff must carry the additional burden of proving that, at the time the representation was made, the defendant had an intention not to perform the act promised and had an intention to deceive the plaintiff.  Id.

The parties disagree as to whether this is a case involving a promise to hire in the future that involves the promissory-fraud-intent-to-deceive standard or a present misrepresentation that involves the less stringent legal-fraud standard articulated in Smith.[4]  In any event, it is unnecessary to decide that issue here because, as the district court determined, Greer failed to present evidence that HMA made a false representation and thus summary judgment in favor of HMA is proper under either standard.  As discussed above, thirteen months had passed between the first letter in March 2003 and the second letter on April 26, 2004, and

---

[3]In Alabama, employment contracts that are indefinite are construed as terminable at will. Smith, 497 So. 2d at 95.  Greer's fraud action does not seek damages for the salary he would have made at HMA; rather he seeks damages for the jobs he turned down from other companies.

[4]To the extent that the promissory-fraud standard applies, we note that Greer did not present any evidence that HMA had no intention to hire Greer and intended to deceive Greer into believing that it did.

8

Greer had not been given an employment position or even a hire date during that thirteen-month period.[5]  Then came the April 26, 2004 letter, which expressly informed Greer that (1) his application would "remain in the HMA hiring process until selected for a position," (2) that "[d]ue to the current volume of hiring" HMA was "not able to provide a time frame that [Greer] could be contacted and given a specific start date," and (3) Greer should not resign from his current employer until he received a "confirmed hire date."  The statement that "[y]our application will remain in the HMA hiring process until selected for a position" informed Greer that he remained in the "hiring process," had not been hired, and had not yet been selected for a position.  Because Greer was still in the hiring process and had not yet been hired, the letter also informed Greer that no time frame could be given and that Greer should not resign until he received a "confirmed hire date."  Thus, there is no false representation in the letter.

The Smith opinion upon which Greer relies is distinguishable in this respect.  The plaintiff in Smith received an offer letter informing her that she was being offered a specific position and advising her of the day she should report for her first day of work, her supervisor, and her work assignment.  Smith, 497 So. 2d at 94.  In contrast, the April 26, 2004 letter from HMA to Greer contained no such

_____

[5]As noted before, while the March 2003 letter is not in evidence, Greer admits that it said the same as the April 26, 2004 letter.

information.

Even if the April 26, 2004 letter does not contain a misrepresentation of a material fact, Greer alternatively argues that he was assured by HMA employees during his medical examination and during an encounter at Wal Mart that he would be hired. Greer cannot identify the HMA employees at Wal Mart and could say only that they were wearing HMA uniforms. The medical personnel worked for Concentra Medical Centers, a third-party contractor who performed medical exams for HMA. In any event, Greer admits he does not know if the individuals at Wal Mart or the medical personnel had hiring authority. In fact, Greer has presented no evidence that these individuals had hiring authority or authority to speak on behalf of HMA as to hiring.

Thus, the district court properly granted summary judgment in favor of HMA on Greer's fraud claim.

## B.    Negligence

In order to prove a negligence claim under Alabama law, a plaintiff must demonstrate that (1) the defendant owed him a duty, (2) the defendant breached that duty, (3) the plaintiff was injured, and (4) the breach proximately caused the plaintiff's injury. See Lowe's Home Ctrs., Inc. v. Laxson, 655 So. 2d 943, 945-46 (Ala. 1994). In determining whether a legal duty exists in a given situation, the

key factor is whether the injury was foreseeable by the defendant.  Patrick v. Union State Bank, 681 So. 2d 1364, 1368 (Ala. 1996).  In addition, Alabama courts also look to (1) the nature of the defendant's activity, (2) the parties' relationship, and (3) the injury or harm threatened.  DiBiasi v. Joe Wheeler Elec. Membership Corp., __ So. 2d __, 2008 WL 110451, at *5 (Ala. Jan. 10, 2008).

Greer has failed to identify what legal duty was owed him by HMA, and, furthermore, the evidence presented by Greer does not show that any such duty existed to Greer as a prospective employee.  Moreover, the April 26, 2004 letter informed Greer that his application would remain in the "HMA hiring process until selected for a position," that HMA could not provide him a time frame for when he could be given a start date, and that he should not resign from his current employer until he received a "confirmed hire date."  In light of this language advising Greer that he had not yet been hired by HMA, it was not reasonably foreseeable to HMA that Greer would rely on the contrary and decline other job offers.  Thus, because HMA did not owe a legal duty to Greer, the district court properly granted summary judgment in favor of HMA on Greer's negligence claim.

## C.    Wantonness

Under Alabama law, wantonness is defined as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and

being conscious that, from doing or omitting to do an act, injury will likely or probably result." Alfa Mut. Ins. Co. v. Roush, 723 So. 2d 1250, 1256 (Ala. 1998). In proving a claim of wantonness, "it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." Id.

Greer presented no evidence that HMA consciously withheld information while knowing that it would likely cause injury to Greer. Thus, the district court properly granted summary judgment in favor of HMA on Greer's wantonness claim.

**AFFIRMED.**