**Brian DORSK, Plaintiff,**

**v.**

**UNUM LIFE INSURANCE COMPANIES OF AMERICA, et al., Defendants.**

**No. CIV. 97–87–P–C.**

United States District Court,
D. Maine.

April 10, 1998.

Jeffrey Rosenblatt, Berman & Simmons, P.A., Lewiston, ME, for Brian Dorsk.

K. Douglas Erdmann, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, for UNUM Life Ins. Companies of America, Maine Center for Cancer Medicine Employee Benefits Plan.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Brian Dorsk seeks to recover benefits allegedly owed to him under a long-term

disability policy issued and administered by Defendant UNUM Life Insurance Companies of America ("UNUM"), which is part of the Defendant Maine Center for Cancer Center Medicine Employee Benefit Plan (the "Plan") established by his employer, Maine Center of Cancer Medicine ("MCCM"). Plaintiff further seeks reinstatement of his right to receive future benefits under the same policy. Now before the Court is Defendants' Motion for Summary Judgment with Incorporated Memorandum of Law ("Defendants' Motion") (Docket No. 24). For the reasons set forth below, the Court will deny Defendants' Motion.

## I. BACKGROUND

Plaintiff is an oncologist who practiced full-time at MCCM (and its predecessor) from August 1973 to May 1992. Statement of Material Facts in Support of Defendants' Motion for Summary Judgment ("Defendants' Statement") (Docket No. 25) ¶ 1; Plaintiff's Statement of Facts in Dispute in Support of his Objection to Defendants' Motion for Summary Judgment ("Plaintiff's Statement") (Docket No. 27) ¶ 1. In May of 1992, Plaintiff was diagnosed with Obsessive–Compulsive Disorder ("OCD") and was unable to work as a result of his condition. Defendants' Statement ¶ 2; Plaintiff's Statement ¶ 2. Plaintiff did return to work part-time for a year beginning in September 1992. Plaintiff's Statement ¶ 2. On October 6, 1992, Plaintiff filed for long-term disability benefits with UNUM's Group Disability Benefits Department pursuant to the Plan's long-term disability policy. Plaintiff's Statement ¶ 2 and Ex. A. On December 7, 1992, a representative of UNUM sent a letter to Plaintiff informing him that his benefits would be subject to the policy's limitation on benefits for disability due to mental illness. Plaintiff's Statement ¶ 7 and Ex. C.

In September 1994, UNUM advanced Plaintiff the remaining two months' worth of disability benefits (in application of the policy's mental illness limitation) and, according

to its internal files, closed Plaintiff's file. Plaintiff's Statement ¶ 9 and Ex. D. The record indicates further correspondence through 1996 between UNUM representatives and Plaintiff discussing refunds to which UNUM claimed it was entitled because of Plaintiff's varying salary entitlements during the benefit period and his receipt of Social Security Disability income. *See id.* The record indicates that Plaintiff's wife questioned UNUM's classification of Plaintiff's OCD as a mental illness in April 1996. Plaintiff's Statement ¶ 10 and Ex. E. UNUM's file notes indicate that a letter denying Plaintiff's claim on the grounds of the policy limitation was never sent. *Id.*

During an August 12, 1996, telephone conversation with a representative of UNUM, Plaintiff's wife requested reconsideration of her husband's claim and was told that his claim would be forwarded to the Quality Review Team. *Id.* Plaintiff formally requested review of his claim in a letter dated August 14, 1996, and UNUM acknowledged receipt of Plaintiff's request on September 19, 1996. *Id.* UNUM informed Plaintiff on September 23, 1996, that it would uphold its original decision to deny Plaintiff benefits based on the mental-illness limitation.[1] *Id.* Plaintiff subsequently filed this suit seeking past benefit payments and reinstatement of his benefit rights under the policy.

## II. STANDARD OF REVIEW

According to the Court of Appeals for the First Circuit,

> Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in the light most favorable to the nonmoving party. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997). The nonmovant may not, of course, defeat a

---

1. The September 23, 1996, letter implies that UNUM made a formal decision to deny Plaintiff further benefits pursuant to the mental-illness limitation. However, as UNUM's own internal records indicate, it does not appear that Plaintiff ever received a denial letter. Plaintiff's Statement ¶ 10 and Ex. E.

motion for summary judgment on conjecture alone. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). *Vartanian v. Monsanto Co.,* 131 F.3d 264, 266 (1st Cir.1997).

## III. DISCUSSION

In Count I, Plaintiff challenges UNUM's denial of benefits under section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* which permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." [2] 29 U.S.C. § 1132(a)(1)(B). ERISA itself does not specify a standard for reviewing benefits decisions made by out-of-court decision-makers. However, in *Firestone Tire and Rubber Company v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court concluded that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 115. Defendants do not assert that UNUM has the necessary authority under the terms of the Plan to trigger a more deferential standard of the review, and therefore, the Court will review UNUM's decision *de novo. See Hughes v. Boston Mut. Life Ins. Co.,* 26 F.3d 264, 267 (1st Cir.1994).

 Plaintiff argues that UNUM incorrectly applied the mental-illness limitation of the long-term disability policy to him. The policy provides in relevant part:

MENTAL ILLNESS LIMITATION

Benefits for disability due to mental illness will not exceed 24 months of monthly benefit payments unless the insured meets one of these situations.

1. The insured is in a hospital or an institution at the end of the 24–month period. The monthly benefit will be paid during the confinement.

. . . .

2. The insured continues to be disabled and becomes confined:
 a. after the 24–month period; and
 b. for at least 14 days in a row.

The monthly benefit will be payable during the confinement.

Long–Term Disability Policy at L–BEN–5, Plaintiff's Statement Ex. B. The policy defines the term "mental illness" as "mental, nervous or emotional diseases or disorders of any type." *Id.* at L–BEN–6. Defendants seek summary judgment on the ground that Plaintiff's disability is due to a "mental disorder of any type," thus bringing Plaintiff's disability within the mental-illness limitation. Defendants' Motion at 3.

 Plaintiff argues that his disability is not due to a "mental illness" as defined by the policy because he asserts that his OCD is in fact a neurobiological disorder rather than a mental disorder. Plaintiff asserts that the policy's definition of "mental illness" excludes those diseases and disorders which have organic causes despite the presence of mental symptoms. Defendants argue that "a plain reading of the definition of mental illness in the MCCM Plan indicates that the term includes *all* mental disorders, those of the type whose etiology is non-organic and those of the type whose etiology is organic." Defendants' Reply Memorandum to Plaintiff's Objection to Motion for Summary Judgment (Docket No. 28) at 5. Defendants correctly remind the Court that the contract language of ERISA plans is to be given its plain meaning, *see Burnham.v. Guardian Life Ins. Co. of America,* 873 F.2d 486, 489 (1st Cir. 1989), and use this rule to bolster their position that Plaintiff's OCD is a "mental disorder of any type" and thus falls within the plain meaning of the mental-illness limitation.[3] However, the Court concurs with

---

**2.** Both parties agree that the Plan is governed by ERISA.

**3.** Defendants argue that determining the plain meaning of the contract language requires the

Plaintiff in concluding that the term "mental disorder," as used in the policy's definition of "mental illness," is ambiguous.[4]

The issue of ambiguity in a term of an insurance contract raises a question of law. *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir.1993). "Contract language is ambiguous if the terms are inconsistent on their face, or if the terms allow reasonable but differing interpretations of their meanings." *Id.* (citations omitted). In the instant case, the parties offer reasonable but differing interpretations of the language "mental disorders of any type." Plaintiff claims the term does not include disorders with organic causes, while Defendants assert that the term includes all sorts of disorders with mental manifestations, whether they have an organic or nonorganic cause. The policy itself is silent as to the role of causes and manifestations in determining whether a disorder qualifies as a "mental disorder" and thus triggers the policy's mental-illness limitation. Because the Court determines that both interpreta-

tions are plausible, the Court finds the language to be ambiguous. *See Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir.1993) (finding the term "mental disorder" to be ambiguous and applying the rule of *contra proferentem*); *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 308 (7th Cir.1992) (finding the term "mental illness" to be ambiguous and applying the rule of *contra proferentem*); *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153 (8th Cir.1990) (finding the term "mental illness" to be ambiguous but declining to apply the rule of *contra proferentem*); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir.1990) (finding the term "mental illness" to be ambiguous and applying the rule of *contra proferentem*).

The Court of Appeals for the First Circuit has instructed that ambiguous terms in ERISA-regulated plans are strictly construed against the insurer pursuant to the rule of *contra proferentem*. *See Hughes*, 26 F.3d at 268. Accordingly, the Court adopts

Court to interpret the language as a layperson would. Defendants urge the Court to follow the Court of Appeals for the Fifth Circuit in its conclusion that the term "mental illness" is not ambiguous because laymen look to the symptoms of an illness to determine whether it is a mental illness. *See Lynd v. Reliance Standard Life Ins. Co.*, 94 F.3d 979, 983 (5th Cir.1996). While the Court agrees that terms of ERISA-regulated plans "must be given their plain meanings, meanings which comport with the interpretations given by the average person," *see Wickman v. Northwestern National Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir.1990), the Fifth Circuit's approach ignores the fact that laymen do not generally diagnose their own disorders. By ignoring the need for medical expertise and participation in determining whether certain symptoms constitute a mental disorder, this approach renders the definition of "mental illness" unreasonably broad. Under the *Lynd* analysis, diseases such as Alzheimer's disease or brain cancer could be considered to be mental illnesses, depending on the symptoms apparent to a layperson. *See Lynd*, 94 F.3d at 987 (Dennis, J., dissenting).

Defendants direct the Court's attention to the Diagnostic and Statistical Manual of Mental Disorders (4th ed.), which lists OCD as a mental disorder, as further evidence that Plaintiff's OCD is a "mental illness" as defined by the policy. Defendants' Statement ¶ 22. However, this psychiatric reference text, which is not referenced in the policy, does not help the Court in its effort to interpret the language and meaning of the poli-

cy's mental-illness limitation. It may be relevant to the factual determination of whether Plaintiff has a disorder within the meaning of the policy's language, but it does not assist the Court in addressing the initial legal issue of whether the policy's term "mental illness" and its accompanying definition are ambiguous.

4. Defendants rely heavily upon the phrase "of any type" as it is used in the policy's definition of the term "mental illness." The Court of Appeals for the Seventh Circuit has addressed a similar argument:

[The defendant] maintains that because the Plan limits benefits for mental illnesses "of any type or cause" the Plan expressly excludes the cause of an illness as a relevant factor in determining the applicability of the limitation to a given mental condition.... [T]his textual interpretation begs the question, because [the plaintiff's] position is that [the beneficiary] does not suffer from a mental illness and therefore the limitation, no matter how it is modified by the "any type or cause" language, is inapplicable to his condition.

*Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 308 (7th Cir.1992). The Court agrees with the logic in *Phillips* and does not find the "of any type" language helpful in making the initial determination as to whether the term "mental disorder" is ambiguous. It is necessary to determine which disorders qualify as mental disorders before the phrase "of any type" becomes applicable.

the construction offered by Plaintiff. The Court will construe the term "mental disorder," as it is used in the policy's definition of "mental illness," to exclude disorders with organic causes. Because it is unclear from the record whether Plaintiff has a disorder with an organic cause and mental manifestations, the Court cannot conclude that Plaintiff's OCD falls outside of the policy's mental-illness limitation as a matter of law. Thus, summary judgment is inappropriate on Count I because a genuine issue of material fact exists.

Count II is brought pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2). Second Amended Complaint (Docket No. 6) ¶ 41. Plaintiff agrees with Defendants' assertion that there is no cognizable claim by a plan participant or beneficiary for individual relief under 29 U.S.C. § 1132(a)(2). *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985). However, Plaintiff insists that he intended to bring Count II pursuant to 29 U.S.C. §§ 1109 and 1132(a)(3) and that a typographical error accounts for the incorrect statutory citation in the Second Amended Complaint. The Supreme Court has held that 29 U.S.C. § 1132(a)(3) authorizes claims by individuals for "appropriate equitable relief" for breach of a fiduciary duty. *Varity Corp. v. Howe,* 516 U.S. 489, 510, 116 S.Ct. 1065, 1076, 134 L.Ed.2d 130 (1996). Although Plaintiff has conceded that Count II would be unnecessary if Defendants abandoned their affirmative defense of failure to exhaust administrative remedies, Defendants have not explicitly done so but rather have argued the merits of the dispute for purpose of summary judgment. Therefore, the Court will deny summary judgment on Count II.

## IV. CONCLUSION

Therefore, it is **ORDERED** that Defendants' Motion be, and it is hereby, **DENIED.**